[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
A decree of dissolution was entered in this matter on April 2, 1997 (Steinberg, J.). Custody and visitation were also resolved as more fully set forth in the Parenting Agreement dated April 2, 1997 and approved by the Court (Steinberg, J.). All financial issues including property division, alimony, child support, liabilities and counsel fees were reserved for this court. A hearing was held on these financial issues commencing February 10, 1998 and concluding February 20, 1998. The parties and their witnesses were heard at length by this court.
The court has carefully considered §§ 46b-81, 46b-82 and46b-62 of the Conn. General Statutes in reaching the decisions as set forth in the orders that follow.
The parties were married on April 30, 1988. Their one minor child, Michael A. Davidson, was born on February 21, 1992. Custody was in issue, however, the parties entered into a parenting agreement dated and approved on April 2, 1997, entered at the same time as the dissolution of the marriage (Steinberg, J.). Sole custody was awarded to the plaintiff, subject to the access and parenting arrangement of the defendant as more fully set forth in the parenting agreement.
The dissolution action was commenced in September 1994. The plaintiff and the minor child left the marital residence in CT Page 2268 January 1996, the plaintiff having purchased her own condo. The plaintiff is in her late thirties and in good health. She is an accountant and has a B.S. degree from Fairfield University. She is presently employed as a financial planner and a property manager. Her base salary is $66,000 per year. She has received bonuses in the past in addition to her salary. The plaintiff worked consistently and steadily throughout the marriage. She returned to work six weeks after the birth of their son. The plaintiff's salary and bonuses were deposited into the parties' joint checking account from which the parties paid their bills, purchased a home and invested in other assets. For several years, the plaintiff's income from earnings exceeded the defendant's.
The defendant is also in his late thirties and in good health. He is also an accountant and received his B.S. from Providence College. During the marriage he was unemployed for approximately 17 months. At the present time, he is self-employed and is earning approximately $57,200 per year according to his current financial affidavit.
The defendant has a trust fund of approximately $200,000 (in round numbers). The defendant has had this fund since age nine. He has sole access to the principal and the income generated by the trust. During the course of the marriage, withdrawals were taken from this trust fund and the funds were placed in the parties' joint checking account. From the joint checking account which now had the plaintiff's earnings, the defendant's earnings and the trust disbursements, the parties ran their household, purchased a marital home and made other investments. The trust paid the federal taxes generated by the trust income. During the course of the marriage, the trust disbursed approximately $235,000 (in round numbers) for the benefit of the parties, including mortgage payoff, investments and federal and state income taxes. All disbursements from the trust went into the parties' joint checking account and was co-mingled with the earnings of the parties.
This court determines that any funds transferred from the trust to the joint checking account of the parties became part of the marital estate and is subject to distribution in accordance with § 46b-81 (and § 46b-82) Conn. Gen. Stat.
The defendant owned two parcels of real estate prior to the marriage. The parties used funds from their joint checking CT Page 2269 account for improvements, remodeling and repairs to the Knollwood Avenue home. The Knollwood Avenue property was placed in both names after the marriage, although solely owned by the defendant prior to the marriage. This property was sold in June 1994 and the net proceeds went into the joint checking account.
The second piece of real estate owned by the defendant prior to the marriage was his grandmother's home in Rhode Island. This real estate was sold in 1993 and the net proceeds were placed in the joint checking account. The trust paid off the mortgage on this property.
The parties purchased their present marital home in May 1994 for $260,000. The defendant currently lives in this property located on Belle Lane, Shelton, Conn. There is an existing mortgage of approximately $196,100 on this property. The sum of $57,500 came from the parties' joint checking account to finalize this purchase. The joint checking account had the plaintiff's earnings (she earned $70,166 in 1993 and $92,500 in 1994), the defendant's earnings (he earned $53,413 in 1993 and $40,886 in 1994), the proceeds from the sale of the Rhode Island house, and whatever sums the defendant deposited from the trust fund to the joint checking account.
In July 1994 the defendant became unemployed for approximately six months. The plaintiff was gainfully employed that year (1994).
Improvement and remodeling costs came from the parties' joint checking account funds.
The parties purchased and sold a condo in Florida. The $6,000 deposit came from the trust into the joint account of the parties. The net proceeds from the sale have been divided.
The parties also purchased and invested in the Gabelli accounts. These funds came from the trust into the joint checking account and were co-mingled with the earnings of the plaintiff and the defendant.
The parties also have a joint investment in Residential Properties of Wilton, Inc. Again, this asset came from co-mingled funds in the joint checking account.
Prior to the marriage, the defendant had a 401(k) account. CT Page 2270 This account grew during the course of the marriage and is now represented in the Fidelity IRA in the present amount of $48,726. The New England Venture IRA in the amount of $25,000 also accrued during the marriage.
The parties purchased Belle Lane, Shelton for $260,000 in May 1994. The parties spent approximately $10,000 in remodeling and repairs. The defendant's real estate expert testified the property had a fair market value as of this date in the amount of $235,000. The present mortgage has an outstanding balance of approximately $196,100. The three comparables selected by the expert were within his range of $235,000. It was interesting to note that other properties in proximity to this marital home sold for a higher figure yet were physically smaller than the subject premises. The expert made a $12,000 adjustment downward for deferred maintenance and $7,000 to fix the roof. He gave the property an enhancement figure of $5,000 for the view of the well-landscaped three acre pond, and screened in porch with the water view.
The plaintiff did not have a real estate appraiser evaluate the property. She relied on the defendant's previously filed financial affidavit which carried the property at $260,000. As recently as July 22, 1996, the defendant indicated the property had a fair market value of $260,000. The plaintiff felt the property had a fair market value of $275,000 using the purchase price of $260,000 plus the cost of remodeling and repairs.
The plaintiff is not a real estate expert but deals with residential properties as part of her asset management duties.
Lesser homes in size, within the same area/proximity and without the water view, had sales prices from $243,000 to $255,000. The expert did not examine the roof, but rather reviewed some photographs taken by the defendant.
The court is using a fair market value of $255,000 for the Belle Lane real estate for purposes of its orders on the allocation of assets.
Both parties appeared to agree that the Shelton lots investment was of no value and this investment was lost.
With respect to the Bart Road investment, the plaintiff cashed this out and used the proceeds toward the purchase of her CT Page 2271 condo. In addition, the plaintiff used her bonus check and some funds from a Gabelli account to complete this purchase in January 1996.
During the course of this marriage, the plaintiff did not sit home on her laurels. She worked outside the home and contributed her salary and bonuses to the parties' joint account. Her financial contribution to the marriage was substantial, along with her noneconomic contributions. Her contribution of her salary to the joint account added to the preservation and/or appreciation of their marital estate. The defendant also worked throughout the marriage except for 17 months of unemployment. His earnings also went into the parties' joint account. He has a substantial trust corpus, which trust generates substantial income which is available to the defendant at will. This capital asset will continue to appreciate in value and the income will continue to be available to the defendant. As previously indicated, from May 1988 to April 1, 1997, the trust made total distribution of $235,496.17 (Defendant's Exhibit W) for the benefit of both parties. These funds were co-mingled into the parties' joint checking account. The trust has a value of $200,000 as of date.
The defendant is a high income earner. In 1994, the year the dissolution was instituted, the defendant had income from earnings in the amount of $133,386. Dividends, interest and capital gains increased his taxable income to $155,916. In 1995, the defendant reported total taxable income of $94,070; and in 1996 $88,131. In 1997, the defendant earned $76,987.55 (excluding any trust income). In late 1997, the defendant was hired by a Norwalk company for $84,000 a year, but unfortunately this job terminated in December 1997.
Unfortunately, the parties were unable to resolve their marital difficulties. No useful purpose would be served by a review of all the evidence presented in this matter. Both parties have incurred very substantial attorneys' fees in connection with the custody dispute as well as with this hearing on the allocation and distribution of the assets accumulated during this marriage.
The court declines to assess fault to either party for the breakdown of the marital relationship.
The following orders shall enter. CT Page 2272
REAL ESTATE
 7 Belle Lane Shelton, Conn.
1) The plaintiff shall transfer her interest in and to the property located at 7 Belle Lane, Shelton, Conn. to the defendant. The defendant shall be solely responsible for the mortgage and taxes and shall indemnify and hold the plaintiff harmless therefrom.
2) Simultaneously with said transfer, the defendant shall pay to the plaintiff the sum of $29,500.
54 Jordan Circle, Shelton, Conn.
The real estate located at 54 Jordan Circle, Shelton, Conn. shall remain the sole property of the plaintiff and the defendant shall have no claim thereto.
OTHER PROPERTY
 Fidelity IRA
The defendant shall assign to the plaintiff the sum of $15,000 from his Fidelity IRA within three weeks of date. The defendant shall retain the remainder. Said assignment shall be by way of an IRA.
Gabelli IRA
The defendant shall assign to the plaintiff one-half of the Gabelli IRA by way of an IRA. The defendant shall retain the remainder.
New England Venture Partnership
The defendant shall be entitled to the New England Venture IRA and the plaintiff shall assign and transfer her interest to the defendant.
Residential Properties of Wilton, LLC
The plaintiff and the defendant shall split equally this investment in Residential Properties of Wilton, LLC (1% to each CT Page 2273 party).
Gabelli Small Cap Growth Fund
The parties shall equally divide the Gabelli Small Cap Growth Fund in the amount of $4,573.
Escrow Funds
The parties shall equally divide the escrow funds of $4,476 presently held by plaintiff's counsel.
Rhode Island Hospital Trust
The defendant shall retain sole ownership and possession of his Rhode Island Hospital Trust which has a value of approximately $200,000 (in round numbers but probably with a value of $198,390) free and clear of any claim by the plaintiff.
ALIMONY
Neither party is awarded alimony.
CHILD SUPPORT
1) The defendant shall pay to the plaintiff as child support for the minor child the sum of $175 per week, in accordance with the child support guidelines and the worksheets as presented by counsel.
2) Commencing March 1, 1998 and monthly thereafter, the defendant shall pay to the plaintiff the sum of $300 per month as a contribution toward the plaintiff's day care expense for the minor child for so long as the defendant has a day care/after school expense. The present day care expense is $698 per month plus $75 per month for hot lunches, activities and fun bus. This day care expense is reasonable and necessary for the plaintiff to maintain her employment. The payment of such cost by the plaintiff does not leave sufficient funds for the child's other needs.
3) Life insurance and medical health insurance for the benefit of the minor child have been addressed in the Parenting Agreement dated April 2, 1997. CT Page 2274
PERSONAL PROPERTY
1) The plaintiff shall be the sole and exclusive owner of the 1993 Lexus motor vehicle. The defendant shall sign the necessary documentation to transfer his title to the plaintiff. The defendant shall be responsible for the balance due on the automobile loan and shall pay of the car loan balance in full within 60 days of date.
2) The defendant shall retain his coin collection.
DEBTS
1) Each party shall be responsible for the debts and liabilities as reflected on their respective financial affidavits unless otherwise disposed of herein.
2) The vet bill shall be the defendant's responsibility.
COUNSEL FEES
On October 21, 1996 at a pendente lite hearing, this court entered an order of counsel fees to be paid by the defendant to the plaintiff in the amount of $9,500. This award of counsel fees has been brought to the court's attention, as instructed by the court on October 21, 1996.
This order of counsel fees was awarded to the plaintiff's former counsel who handled the fully contested custody matter and the dissolution that was heard on April 2, 1997 (Steinberg, J.).
The court is aware that the plaintiff used joint funds, as did the defendant, for other payments to counsel.
This court has considered the respective financial abilities of the parties and the criteria set forth in § 46b-82 C.G.S. as required by § 46b-62 C.G.S. in entering the order which follows. The division of the marital assets has not resulted in the plaintiff receiving any substantial amount of liquid assets. To require the plaintiff to pay all of her counsel fees from the cash sum she is receiving for her interest in the marital home would destroy the mosaic this court has attempted to craft in arriving at a fair and equitable division of the marital assets.
Accordingly, the court orders the defendant to pay the sum CT Page 2275 of $10,000 to the plaintiff as a contribution toward her attorney's fees.
INCOME TAX EXEMPTION
The parties shall alternate taking the minor child as an exemption for federal and state income tax purposes. The plaintiff shall claim the child for the tax year 1997 and alternately thereafter.
Coppeto, J.